UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:24-cr-498-01 |
| | § | |
| ANTONIO CURO | § | |

## PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, and Anibal J. Alaniz and Casey N. MacDonald, Assistant United States Attorneys, and the defendant, Antonio Curo ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.     Defendant agrees to plead guilty to Counts Two and Six of the indictment. Counts Two and Six charge Defendant with possession with intent to distribute a controlled substance, that is, fentanyl, resulting in death in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 21, United States Code, Section 846, 841(a)(1) and 841(b)(1)(C), resulting in death is imprisonment of not less than 20 years up and to life imprisonment and a fine of not more than $1,000,000. Additionally, Defendant will receive a term of supervised release after imprisonment of at least 3 years. *See* Title 21, United States Code, Sections 841(b)(1)(A). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 5 (class A felony) years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00)

2

per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation [If Applicable]

5. Should the Defendant seek to provide substantial assistance to authorities, as contemplated by Section 5K1.1 of the United States Sentencing Guidelines, the Defendant understands and agrees that whether such a motion is filed

3

will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should the Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a § 5K1.1 motion. In seeking such a motion, the Defendant agrees to fully cooperate with the United States. The Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.     The Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to the sale and distribution of pills that contained fentanyl. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)     Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

4

(d)    Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)    Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)    Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal, Collateral Review, and Statute of Limitations

7.    Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following

5

the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.     Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or

6

representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.    Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

11.    The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Counts Two and Six of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b)    If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty,

7

thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently;

(c)    The Government will recommend that the Court order that the sentences for Counts Two and Six run concurrently;

(d)    The Government will recommend that the Court order that the sentence imposed in this case run concurrently with the sentenced imposed in Criminal Case No. 25-cr-0482.

## Agreement Binding - Southern District of Texas Only

12.    The United States Attorney's Office for the Southern District of Texas

agrees that it will not further criminally prosecute Defendant in the Southern District

of Texas for the specific conduct described in the indictment. This plea agreement

binds only the United States Attorney's Office for the Southern District of Texas and

Defendant. It does not bind any other United States Attorney's Office. The United

States Attorney's Office for the Southern District of Texas will bring this plea

agreement and the full extent of Defendant's cooperation to the attention of other

prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13.    The United States reserves the right to carry out its responsibilities

under guidelines sentencing. Specifically, the United States reserves the right:

(a)    to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation

8

Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing

9

judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)   If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

10

**Factual Basis for Guilty Plea**

16.    Defendant is pleading guilty because he is in fact guilty of the charge contained in Counts Two and Six of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

In December 2023, inspectors with the United States Postal Service and agents with Homeland Security Investigations ("HSI") received information that the Defendant was distributing counterfeit OxyContin and Percocet pills laced with fentanyl through the United States mail to individuals across the country.

Count Two
Death of B.M.T.

a.    On December 5, 2023, a 24-year-old male whose initials are B.T.M. died after consuming pills that contained fentanyl.

b.    The investigation revealed that B.T.M. purchased counterfeit OxyContin and Percocet pills from the Defendant. B.T.M. received the pills from the Defendant in a parcel sent through the United States Postal Service. B.T.M.'s girlfriend, A.C., was with B.T.M. when B.T.M. opened the USPO parcel containing the pills and saw B.T.M. ingest the pills.

11

c.      After ingesting the pills, A.C. found B.T.M dead inside their apartment in Waterbury, Connecticut.

d.      During the investigation, law enforcement officers recovered a video taken with B.T.M.'s cell phone that showed B.T.M. and A.C. opening a USPO parcel and removing approximately eleven (11) circular pills suspected to be counterfeit oxycodone pills and approximately eight (8) rectangular pills suspected to be Xanax.

e.      A.C. told agents that B.T.M. ordered the pills from an individual via the Telegram application, and paid for the pills through Cash App. Records from Telegram, Cash App, USPS and Uber revealed that the Defendant sent the parcel that contained the pills to B.T.M.

f.      A toxicology analysis of B.T.M's blood revealed that it contained fentanyl.

g.      The Defendant knowingly possessed a controlled substance by actual physical possession of pills that contained fentanyly possessing pills that contained fentanyl, putting the pills in a USPO package and mailing the USPO package to B.T.M.

h.      The pills in fact contained fentanyl.

i.      The Defendant possessed the substance with the intent to distribute it, that is, with the intent to deliver and transfer possession of the controlled substance to another person.

j.      The Defendant's distribution and sale of pills that contained fentanyl to B.T.M and B.T.M.'s ingestion of the pills caused B.T.M.'s death.

<u>Count Six</u>
<u>Death of Minor Victim</u>

k.      On January 18, 2024, a 16-year-old female ("Minor Victim") died after consuming pills that contained fentanyl.

l.      The minor victim's father, T.L., found her dead in her room. Next to her body, there was a white pill labeled "M-30." A chemical analysis of the white pill labeled "M-30" revealed that the pill contained fentanyl with a net weight .095 grams.

m.      The investigation into the Minor Victim's death revealed that the minor victim obtained the counterfeit Percocet pills that contained fentanyl from the Defendant the day before her death.

n.      After obtaining the pills that contained fentanyl, the Minor Victim ingested the pills. After the Minor Victim's death, posts and direct messages on the Defendant's Twitter/X account showed that the Defendant was made aware of the minor victim's death. The posts also revealed the Defendant knew that the pills he

13

was selling contained fentanyl.

o.    A toxicology analysis of the Minor Victim's blood revealed that it contained fentanyl.

p.    The Defendant knowingly possessed a controlled substance by actual physical possession of pills that contained fentanyl.

q.    The pills in fact contained fentanyl.

r.    The Defendant possessed the substance with the intent to distribute it, that is, with the intent to deliver and transfer possession of the controlled substance to another person.

s.    The Defendant's distribution of the pills that contained fentanyl to the Minor Victim and the Minor Victim's ingestion of the pills caused her death.

### Seizures of pills containing fentanyl

t.    On January 5, 2024, Iowa agents seized a USPO parcel sent by the Defendant. Agents obtained a search warrant to search the parcel and found pills inside. A lab analysis showed the pills contained fentanyl with a net weight of 9.48 grams.

u.    On January 22, 2024, Houston agents seized a USPO parcel addressed to the Defendant and sent to the Defendant's address. Agents obtained a search warrant to search the parcel and found pills inside. A lab analysis showed the pills

14

contained fentanyl with a net weight of 299.92 grams.

v.      On February 12, 2024, an HSI undercover agent ("UCA") in Houston negotiated the purchase of 17 blue "M30" pills for $100 from the Defendant. The Defendant mailed the UCA a parcel containing 17 pills. A lab analysis showed the pills contained fentanyl with a net weight of 1.86 grams.

w.      On February 14, 2024, Houston agents seized a USPO parcel addressed to the Defendant and sent to the Defendant's address. Agents obtained a search warrant to search the parcel and found pills inside. A lab analysis showed the pills contained fentanyl with a net weight of 135.12 grams.

x.      On April 10, 2024, agents seized 100 pills from co-defendant Makalob Hill ("Hill") in Houston. Hill received the pills from an unindicted co-conspirator who sent them in a United States Postal Service parcel. Hill picked up the parcel containing the pills at the direction of the Defendant and was to deliver the pills to the Defendant. A lab analysis showed the pills contained fentanyl with a net weight of 32.02 grams.

## Breach of Plea Agreement

17.     If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand.

15

If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

18.    Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19.    Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations.

### Financial Statement

20.    Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full

16

disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

21.    Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

22.    This written plea agreement, consisting of 20 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless

17

in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

23. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____January 23_____, 2026.

_____
Antonio Curo
Defendant

Subscribed and sworn to before me on _____January 27_____, 2026.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Nicholas J. Ganjei
United States Attorney

By: _____          _____
Casey N. MacDonald                        Jason Luong
Assistant United States Attorney          Attorney for Defendant

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA      §
                              §
v.                            §    CRIMINAL NO. 4:24-cr-498-01
                              §
ANTONIO CURO                  §

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          1-23-2025
Jason Luong                        _____
Attorney for Defendant             Date

19

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          1-23-2026
Antonio Curo                             _____
Defendant                                Date

20